# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**J.A.H. ENTERPRISES, INC.**                                     **CIVIL ACTION**

**VERSUS**

                                                                 **NO. 16-124-SDD-RLB**

**BLH EQUIPMENT, L.L.C., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 31, 2016.

_____
    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| J.A.H. ENTERPRISES, INC. | CIVIL ACTION |
| VERSUS | |
| | NO. 16-124-SDD-RLB |
| BLH EQUIPMENT, L.L.C., ET AL. | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant Sam Everett's Motion to Dismiss for lack of personal jurisdiction. (R. Doc. 5).  The motion is opposed. (R. Doc. 13).  Defendant Sam Everett has filed a Reply. (R. Doc. 17).

Also before the Court is Defendant Sam Everett's Re-Urged Motion to Dismiss for lack of personal jurisdiction. (R. Doc. 33).  The motion is opposed. (R. Doc. 45). Defendant Sam Everett has filed a Reply. (R. Doc. 54).

I.      Background

On May 27, 2014, plaintiff J.A.H. Enterprises, Inc., which does business as "Henderson Auctions," initiated this action in the 21st Judicial District Court, Livingston Parish, Louisiana, naming as defendants BLH Equipment, L.L.C. ("BLH"), James Blake Everett ("Blake Everett"), Sam Everett, and ELA Mission, L.L.C. ("ELA") (collectively, "Defendants"). (R. Doc. 1-2, "Petition").

In the original Petition, Henderson Auctions alleges that it acquired a casino vessel for approximately $600,000, expended approximately $300,000 to maintain, moor, and prepare the vessel for resale, and that it partnered with Blake Everett to sell the vessel and split the profits equally. (Petition ¶¶ 5, 9-11).  The Petition provides that Henderson Auctions reached an agreement with a Louisiana buyer to transfer title to the casino vessel for $350,000 in cash and title to a property in Kosiusko, Mississippi known as the "Ivey House." (Petition ¶ 12).  The

1

Petition further provides that Blake Everett then set up ELA, a Mississippi limited liability company to which only Blake Everett is a member, to take ownership of the Ivey House despite the parties' agreement to place ownership into the hands of a co-owned limited liability company. (Petition ¶¶ 13-14). The Petition further provides that Blake Everett scheduled an auction of the Ivey House and its contents without informing Henderson Auctions or its owners, Jeffrey Henderson and Janet Henderson Cagley. (Petition ¶ 17). Henderson Auctions obtained a temporary restraining order from a Mississippi state court requiring the escrow of any proceeds of the sale of the assets. (Petition ¶ 18).

With regard to Sam Everett, the father of Blake Everett, the Petition provides that he has "been personally involved in a number of different transactions with Henderson Auctions"; he "failed to disclose the pending auctions and proposed sale of the Ivey House and the other assets at any point in time"; and he was "a joint venture partner in connection with the Ivey House sale." (Petition ¶¶ 8, 17, 29, 31).

On March 21, 2016, Sam Everett moved for his dismissal as a defendant pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (R. Doc. 5).

On March 31, 2016, Blake Everett, BLH, and ELA answered the Petition and filed counterclaims seeking recovery for (1) Breach of Contract/Bad Faith Breach of Contact and (2) Demand for Accounting. (R. Doc. 6).[1]

On April 29, 2016, the Court entered into the record BLH's Third Party Complaint (R. Doc. 25), which names Marvin Henderson, father of Jeffrey Henderson and Janet Henderson Cagley, as a third-party defendant.

---

[1] The Answer references an Exhibit A consisting of a spreadsheet setting forth certain amounts due to Blake Everett and/or BLH. (R. Doc. 6 at 16). It appears that the referenced Exhibit A was wrongly attached to the concurrently filed Motion to Dismiss filed by Sam Everett. This spreadsheet provides an accounting of various purchases of items from October 4, 2012 through March 4, 2014 and indicates a balance due to BLH from Henderson Auctions in the amount of $601,877. (R. Doc. 5-3).

2

On May 31, 2016, Henderson Auctions filed an Amended Complaint. (R. Doc. 31, "Am. Compl."), which raises more specific allegations regarding Sam Everett's involvement in the claims at issue.[2]  In the Amended Complaint, Henderson Auctions alleges that Sam Everett had "knowledge" that Henderson Auctions expended over $600,000 regarding the purchase of the casino vessel and that the sale was "negotiated in Louisiana by Blake and Sam Everett with the owner at the time." (Am. Compl. ¶ 10).  Henderson Auctions alleges that "Blake and Sam Everett came to Louisiana repeatedly in efforts to sell the casino vessel" and that "[t]hese two defendants eventually reached an agreement in Louisiana in mid-2013 with a buyer named Dr. Rhodes." (Am. Compl. ¶ 13).  Henderson Auctions alleges that both Blake and Sam Everett represented to Jeffrey Henderson and Janet Henderson Cagley that the sale price would include a cash payment of $350,000 and title to the Ivey House. (Am. Compl. ¶ 13).  Henderson Auctions alleges that, contrary to an agreement between all parties to this lawsuit, Sam Everett directed his son to set up ELA for the purpose of taking title to the Ivey House at closing. (Am. Compl. ¶ 14). Henderson Auctions further alleges that Sam and Blake Everett actually contracted to obtain $460,000 from Dr. Rhodes without informing Henderson Auctions, with the intention of splitting the additional money amongst themselves and Marvin Henderson. (Am. Compl. ¶¶ 16-17).

Furthermore, Henderson Auctions alleges that Sam Everett was involved in scheduling the auction of the Ivey House and its items and "personally participated in the sale of the antiques and contents from the Ivey House without disclosing to Henderson Auctions the fact of the sale or that the proceeds were going to be diverted to his, Blake Everett's, or BLH

---

[2] While Henderson Auctions filed the Amended Complaint on the deadline set by the Court's Scheduling Order, it did not seek leave to file the amended pleading pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  As none of the Defendants have moved to strike the Amended Complaint, the Court concludes that any motion for leave would have been unopposed.  The Amended Complaint is deemed entered into the record and will be considered Henderson Auctions' operative pleading with regard to the pending motions.

Equipment's coffers." (Am. Compl. ¶ 22). With regard to the other transactions forming the basis of the counterclaim asserted by Sam Everett's co-defendants, Henderson Auctions asserts that "Sam Everett has been an active participant in the transactions . . . , including repeated travels to Louisiana to participate in negotiations with third parties and Henderson Auctions (including meetings with Marvin Henderson)." (Am. Compl. ¶ 36).

Henderson Auctions seeks to recover damages and/or declaratory relief for the following causes of action: (1) Breach of Fiduciary Duty; (2) Breach of Contract/Bad Faith Breach of Contract; (3) Detrimental Reliance; (4) Conversion/Fraud/Misrepresentation; (5) Declaratory Judgment; and (6) Demand for Accounting. (Am. Compl. ¶¶ 38-67).

On June 14, 2016, Sam Everett reurged his motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, specifically addressing the allegations in the Amended Complaint. (R. Doc. 33).

## II. Arguments of the Parties

Sam Everett argues that the allegations in the Petition and/or Amended Complaint do not establish that he has "minimum contacts" to establish either general or specific jurisdiction, as the allegations consist of conclusory factual allegations or statements of law and/or do not meet the pleading standard of Rule 9(b). (R. Doc. 5-1 at 3-8; R. Doc. 33-1 at 6-8). Furthermore, Mr. Everett argues that the exercise of personal jurisdiction is precluded by the fiduciary shield doctrine because his contacts with the forum state were solely in his capacity as a representative of BAH. (R. Doc. 5-1 at 5; R. Doc. 33-1 at 11-14). Mr. Everett submits his own affidavit (R. Doc. 33-3) and his son Blake Everett's affidavit (R. Doc. 33-4) in support of a finding that the Court cannot exercise personal jurisdiction over him. Mr. Everett addresses the factual assertions made in declarations submitted by Henderson Auctions. (R. Doc. 54 at 4-7).

Henderson Auctions argues that Mr. Everett has "minimum contacts" to establish specific jurisdiction because "almost all of the disputed transactions involved meetings, negotiations and deals in Louisiana in which Sam Everett was personally involved here in Louisiana." (R. Doc. 13 at 7-8; R. Doc. 45 at 13-16).  Henderson Auctions further argues that the fiduciary shield doctrine is inapplicable in light of the allegations of fraud. (R. Doc. 13 at 9; R. Doc. 45 at 17). Henderson Auctions notes that Mr. Everett does not argue that the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." (R. Doc. 13 at 6; R. Doc. 45 at 12).  Henderson Auctions submits declarations by Janet Henderson Cagley (R. Doc. 45-1) and Marvin Henderson (R. Doc. 45-2) in support of a finding of personal jurisdiction over Sam Everett.

## III.    Law and Analysis

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  The plaintiff bears the burden of making a *prima facie* showing that the Court has jurisdiction over a defendant. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996); *Percle v. SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 633 (M.D. La. 2004).  "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  However, in assessing whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x. 628, 631 (5th Cir. 2015) (quoting *Panda Brandy Wine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).  The Court may

5

consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

In a diversity action, a federal district court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. *Panda Brandywine*, 253 F.3d at 868. "A federal court . . . may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). It is well-established that Louisiana's long arm statute, La. R.S. § 13:3201, is coextensive with the limits of constitutional due process. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Thus, the inquiry is whether the exercise of personal jurisdiction comports with federal constitutional due process guarantees. *Id.* "[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Sufficient minimum contacts will give rise to either general, "all-purpose" jurisdiction or specific, "case-linked" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v Brown*, 564 U.S. 915, 919 (2011).

### A.       General Jurisdiction

When a nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, "are so 'continuous and systematic' as to render [it] essentially at

home in the forum State," the Court may exercise general personal jurisdiction over the defendant. *Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014) (quoting *Goodyear*, 131 S.Ct. 2846, 2851 (2011)) (alteration original); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). The Supreme Court considered the requirements for establishing general jurisdiction in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014). The Court instructs that the proper consideration when determining general jurisdiction is "whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. 2846, 2851 (2011)) (alteration original). The Fifth Circuit has observed that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd., v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Henderson Auctions does not argue that the Court may exercise general jurisdiction over Sam Everett, and, instead, solely relies on the Court's exercise of specific jurisdiction. (*See* R. Doc. 13 at 5; R. Doc. 45 at 8). As Henderson Auctions has not made a prima facie showing that the Court may exercise general jurisdiction over the defendant, the Court will turn to whether Henderson Auctions has established that the Court may exercise specific jurisdiction over him.

**B.      Specific Jurisdiction**

Even when the defendant lacks "continuous and systematic contacts" to support general jurisdiction, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Luv N'care*, 438 F.2d at 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 414 (1984)). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "[T]o exercise

jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Id.*

The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at 433 (quoting *Seiferth* at 271).  Stated differently, the first two prongs requires there to "be a sufficient nexus between the defendant's minimum contacts and the plaintiff's alleged injury." *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342–43 (5th Cir. 2014) (citing *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010).  If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted).

### 1. Sam Everett's Forum-Related Contacts

For the following reasons, Henderson Auctions has made a *prima facie* showing that Sam Everett has minimum contacts with the forum state of Louisiana and that there is a sufficient nexus between those contacts and each of the alleged causes of action.

Henderson Auctions has alleged in the Amended Complaint that Sam Everett negotiated and was otherwise involved in the purchase of the casino vessel in Louisiana or otherwise traveled to Louisiana to engage in other business transactions with Henderson Auctions. (Compl. ¶¶ 10, 13, 36).  In addition, Henderson Auctions has submitted declarations indicating that Sam Everett travelled to Louisiana on 10-15 occasions to discuss business with Henderson Auctions

and that he accompanied Blake Everett to meet with Mr. Rhodes in Louisiana in 2013 regarding the sale of the casino vessel. (R. Doc. 45-1, ¶¶ 3, 10; R. Doc. 45-2, ¶¶ 4, 8).

Henderson Auctions also alleges that Sam Everett made specific misrepresentations and/or omissions directed at Henderson Auctions and/or its owners in Louisiana, as paraphrased below:

- Sam Everett "knowingly made false statements" about Henderson Auctions, Blake Everett's alleged ownership of Henderson Auctions, and about the material facts of the Ivey House transaction to benefit himself. (Am. Compl. ¶ 36).

- Sam Everett represented to the owners of Henderson Auctions that the casino vessel was being sold to Dr. Rhodes for title to the Ivey House and $350,000 despite actually contracting title to the Ivey House and $460,000. (Am. Compl. ¶¶ 13, 16).

- Sam Everett requested an acknowledgment that Henderson Auctions had received $350,000.00 and falsely represented that BLH had "been paid nothing thus far" after Henderson Auctions received a wire for $340,000. (Am. Compl. ¶ 18).

- Sam Everett participated in a sale of the contents of the Ivey House without disclosing to Henderson Auctions the fact of the sale or that the proceeds were to remain with Sam Everett, Blake Everett, and/or BLH. (Am. Compl. ¶ 22).

Moreover, Henderson Auctions alleges that Sam Everett was a "joint venture partner in connection with the Ivey House sale" and that it had "a special relationship of trust and a fiduciary duty with" Sam Everett. (Am. Compl. ¶ 39). Henderson Auctions submits two sets of communications in support of this contention. First, it submits a set of emails dated June 27, 2013 in which Sam Everett refers to himself as a "joint owner" of the casino vessel and that he hoped to make a "ton on that boat" in its sale. (R. Doc. 13-4). Second, it submits a March 3, 2014 e-mail from Sam Everett's account to demonstrate Sam Everett's involvement in the underlying transactions at issue. (R. Doc. 13-8; *see also* Am. Compl. ¶ 18).[3]

---

[3] There is no dispute that the unsigned email was sent from Sam Everett's account. Blake Everett, however, has submitted affidavits indicating that he (and not his father Sam Everett) authored the email. (R. Doc. 17-1; R. Doc. 33-4).

Sam Everett has submitted affidavits to controvert the allegations in the Amended Complaint and the assertions in the declarations submitted by Henderson Auctions. Sam Everett's own affidavit provides that he is a resident of, and domiciled in, the state of Mississippi; he has never lived in Louisiana; and he has never owned any property in Louisiana. (R. Doc. 33-3 at 1). Mr. Everett further represents that he is a retired accountant who assists his son, Blake Everett, in his management of BLH "primarily with respect to bookkeeping in a back office support role only"; that he has no ownership interest or management position in BLH and/or ELA; and that he has never personally done any transactions with Henderson Auctions, partnered with Henderson Auctions, or otherwise had any relationship and/or financial obligations with regard to Henderson Auctions. (R. Doc. 33-3 at 1-2). Sam Everett also denies the allegations in the Amended Complaint regarding his alleged false misrepresentations and/or omissions; states that he attended but otherwise was not involved in the auction of the contents of the Ivey House; and that he has "traveled to Louisiana on occasion in connection with BLH's dealings with [Henderson Auctions], but only in a limited back office support role based on instructions given to [him] by Blake [Everett]." (R. Doc. 33-3 at 2). Blake Everett has also submitted an affidavit providing, among other things, that his father Sam Everett has only traveled to Louisiana to engage in transactions with Henderson Auctions for the purpose of assisting in his management of BLH. (R. Doc. 33-4 at 2).

In support of a finding that Henderson Auctions has not established personal jurisdiction, Sam Everett argues that the allegations in the Amended Complaint concerning fraudulent misrepresentations and/or omissions do not meet the pleading standards of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or

10

mistake." Fed. R. Civ. P. 9(b).[4]  The general argument is that the allegations regarding fraud

directed at Sam Everett are not stated with particularity and, therefore, should not be construed in

favor of Henderson Auctions.  In other words, Sam Everett argues that because the heightened

pleading standard of Rule 9(b) is not satisfied, Henderson Auctions cannot make a *prima facie*

showing of personal jurisdiction.

At the outset, the Court notes that the instant motion is brought before the Court pursuant

to Rule 12(b)(2) and not Rule 9(b) and/or 12(b)(6).  Whether the allegations of fraud in the

Amended Complaint meet the pleading standards set forth in Rule 9(b) is not directly before the

Court.  Indeed, district courts faced with separate Rule 12(b)(2) and Rule 9(b) and/or 12(b)(6)

motions analyze those motions separately. *See Harch Hyperbarics, Inc. v. Martinucci*, No. 09-

7467, 2010 WL 3398884, at *3 (E.D. La. Aug. 20, 2010) (conducting separate analysis of

specific personal jurisdiction pursuant to Rule 12(b)(2) and sufficiency of the allegations

pursuant to Rule 9(b) and Rule 12(b)(6)); *see also Southern Audio Servs., Inc. v. Carbon Audio,

LLC*, 141 F. Supp. 3d 653, 659 (M.D. La. 2015) (conducting separate Rule 12(b)(2) and Rule

12(b)(6) analysis).  Accordingly, the Court will analyze whether Henderson Auctions has

asserted a *prima facie* case of minimum contacts without engaging in an analysis of whether the

claims have been asserted in a sufficient manner to meet the pleading standards as provided by

the Federal Rules of Civil Procedure.[5]

---

[4] In determining whether an allegation of fraud meets the "particularity" requirement of Rule 9(b), at a minimum the rule "requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)

[5]  At least one court in the Fifth Circuit has specifically looked to whether fraud was alleged with particularity when determining whether personal jurisdiction exists.  *See Moody Nat. Realty v. Ozark Mgmt., Inc.*, No. 07-3239, 2008 WL 8082760, at *6 (S.D. Tex. Apr. 22, 2008).  The *Moody* court still allowed Plaintiff an opportunity to re-plead.  The undersigned further notes that the allegations at issue in *Moody* matter were significantly different than those in the instant case.

Sam Everett argues that there are no particular allegations establishing that he had a contract with or was a partner of Henderson Auctions or that he otherwise had a fiduciary duty to disclose any information Henderson Auctions (R. Doc. 33-1 at 6-11).  In addition, Mr. Everett claims that because any travels he had to Louisiana were in a support role to his son's management of BLH, the allegations do not form a basis for personal jurisdiction over him in light of the "fiduciary shield doctrine." (R. Doc. 33-1 at 15).

Under the fiduciary-shield doctrine, "[e]ven if a defendant corporation has established minimum contacts by contracting with the plaintiff in the forum state, a court may not exercise jurisdiction over a corporate representative whose activities were directed towards the forum state solely on behalf of the corporation, and in his capacity as a corporate representative." *Southern Filter Media, LLC v. Halter*, No. 13-116, 2013 WL 3423269, at *4 (M.D. La. July 8, 2013) (citing *Miller v. Am. Gen. Fin. Corp.,* 2002 WL 2022536, at *12 (E.D. La. Sept. 4, 2002)). The Court may, however, exercise personal jurisdiction over the corporate representative where the individual has "personally engaged in activities within the forum state which would bring him within the state's long-arm statute . . . for instance, by committing a tort, such as fraud, in the forum state." *Id*. (citations omitted).  The fiduciary shield doctrine does not apply where the plaintiff alleges fraud under Louisiana law.  *Bellino v. Simon*, No. 99-2208, 1999 WL 1059753, at *3 (E.D. La. Nov. 22, 1999); *see Gen. Retail Serv., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x. 775, 794-95 (5th Cir. 2007) (under Texas law, "the fiduciary-shield doctrine . . . does not prohibit [the defendant] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation.").  In light of the allegations of fraud specifically directed at Sam Everett in the Amended Complaint, the fiduciary-shield doctrine does not preclude an exercise of personal jurisdiction over Sam Everett.

12

Having found that the fiduciary-shield doctrine is inapplicable, the Court concludes that the allegations in the Amended Complaint are sufficient to establish a *prima facie* case of minimum contacts. "Even a single act by the defendant directed at the forum state can be enough to establish personal jurisdiction, if that act gives rise to plaintiff's claims." *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir. 1993) (citations omitted). Here, there is no dispute that Sam Everett has travelled to Louisiana regarding the sale of the casino vessel and that he has sent at least one e-mail communication directed to an owner of Henderson Auctions in which he refers to himself as a "joint owner" of the casino vessel and that he hoped to make a "ton on that boat."  Moreover, Henderson Auctions alleges that Sam Everett falsely represented the amount of cash obtained for the casino vessel (Am. Compl. ¶ 16) and the amount of proceeds to be obtained from the sale of the Ivey House.  These uncontroverted facts establish that Same Everett has minimum contacts with the forum state of Louisiana.  *See FCA Ins. Co. v. Bay Corp. Holdings, Ltd.,* 48 F. App'x 480 (5th Cir. 2002) (false assurance and misrepresentations sent to Texas to induce a plaintiff and the fact that the plaintiff detrimentally relied upon such assurances and misrepresentations is a sufficient basis for a court to exercise specific jurisdiction over a defendant).

Each of the six causes of action alleged by Henderson Auctions is related to Sam Everett's minimum contacts with the forum state, as they all concern the sale of the casino vessel, and/or the alleged fraudulent misrepresentations and/or omissions made by Sam Everett regarding the sale and proceeds, and/or other transactions between the parties involving Sam Everett.

Given that uncontroverted allegations in the Amended Complaint must be taken as true, and conflicts between the facts contained in the parties' declarations and affidavits must be resolved in Henderson Auctions' favor for the purpose of determining whether a *prima facie* case

for personal jurisdiction exists, the Court concludes that Henderson Auctions has established that Sam Everett has minimum contacts with the forum state of Louisiana and that there is a sufficient nexus between those contacts and each of the alleged causes of action.

### 2.   Fair Play and Substantial Justice

Upon a finding of minimum contacts, a court will exercise jurisdiction unless there are legitimate concerns regarding fair play and substantial justice that would require it to do otherwise. *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  "[O]nce a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Id*.  A defendant only overcomes this burden by making a "compelling case" against the exercise of personal jurisdiction. *Id*.  (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Furthermore, the Fifth Circuit has determined that if minimum contacts are established, it will be rare that a court determines that the exercise of jurisdiction would be unfair, since the interests of the forum state in resolving the matter may justify even large burdens on the non-resident defendant. *McFadin*, 587 F.3d at 759-60.

The Fifth Circuit has articulated the criteria a district court should consider in determining whether it would be unfair to exercise personal jurisdiction even where minimum contacts have been established; these are: (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the court's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Id*. (citing *Luv N'Care*, 438 F.3d at 473).

Henderson Auction's pursuit of its claims in this forum will not offend traditional notions of fair play and substantial justice.  While litigation in this forum will impose a burden on Sam

Everett, Henderson Auction's interest in obtaining convenient and effective relief in Louisiana weighs in favor of litigation in this forum.  In addition, the forum state's desire to protect its resident companies and the rights to property interests in Louisiana also weighs heavily in favor of litigation in this forum.  Louisiana has a strong interest in efficiently resolving the claims presented in this matter, which concern alleged fraud on a Louisiana business entity in Louisiana. Finally, Sam Everett raises no specific argument to establish that requiring him to litigate in this forum will offend traditional notions of fair play and substantial justice.

## IV.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** the Sam Everett's Motion to Dismiss for lack of personal jurisdiction (R. Doc. 5) and Re-Urged Motion to Dismiss for lack of personal jurisdiction (R. Doc. 33) be **DENIED**.

Signed in Baton Rouge, Louisiana, on August 31, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**