UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| J.A.H. ENTERPRISES, INC. | CIVIL ACTION |
| VERSUS | 16-124-SDD-RLB |
| BLH EQUIPMENT, LLC, ET AL. | |

**RULING**

This matter is before the Court on the *Motion to Dismiss Third Party Complaint for Failure to State a Claim*[1] by Third-Party Defendant Marvin Henderson ("Henderson"). Defendant and Third-Party Plaintiff, BLH Equipment, LLC, ("BLH") has filed an *Opposition*[2] to this motion to which Henderson has filed a *Reply*.[3] For the following reasons, the Court finds that Henderson's motion should be denied.

**I.   FACTUAL BACKGROUND**

Plaintiff J.A.H. Enterprises (hereinafter "JAH"), doing business as "Henderson Auctions," is in the business of buying and reselling equipment on consignment through private sales and public auctions. JAH instituted this action against Defendants BLH, James Blake Everett, Sam Everett, and ELA Mission, L.L.C. The parties dispute over a dozen transactions, and JAH contends it is owed at least $200,000 from the Defendants as a result of several business dealings.

JAH alleges that it acquired a casino vessel for approximately $600,000, expended

---

[1] Rec. Doc. No. 60.
[2] Rec. Doc. No. 62.
[3] Rec. Doc. No. 69.
Document Number: 36478

approximately $300,000 to maintain, moor, and prepare the vessel for resale, and partnered with Blake Everett to sell the vessel and split the profits equally.[4] JAH allegedly reached an agreement with a Louisiana buyer to transfer title to the casino vessel for $350,000 in cash and title to a property in Kosiusko, Mississippi known as the "Ivey House."[5] Thereafter, Blake Everett allegedly set up ELA, a Mississippi limited liability company to which only Blake Everett was a member, to take ownership of the Ivey House despite the parties' previous agreement to establish ownership in a co-owned limited liability company.[6] It is further alleged that Blake Everett scheduled an auction of the Ivey House and its contents without informing JAH or its owners, Jeffrey Henderson and Janet Henderson Cagley.[7]

BLH filed an *Answer* and *Counterclaim*[8] alleging that JAH was represented by Marvin Henderson in the 2012 agreement whereby BLH would locate items of property for sale and notify JAH.[9] BLH contends that, if JAH was interested, JAH would set the prices and put up the money to purchase the equipment, or the owners of the property would be paid from sales proceeds.[10] JAH would then typically sell the property through one of its auctions, and BLH would receive 50% of the profit from the rent or sale of the property.[11] BLH claims that it is owed monies relating to various items of property, including the Ivey House transaction.[12] BLH further claims there was never any

---

[4] Rec. Doc. No. 1-2, ¶¶ 5, 9-11.
[5] *Id.* at ¶ 12.
[6] *Id.* at ¶¶ 13-14.
[7] *Id.* at ¶ 17.
[8] Rec. Doc. No. 6.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 10.
[11] *Id.* at ¶¶ 11-12.
[12] *Id.* at ¶ 14.

agreement to share losses as JAH set the prices and purchased the property.[13]

Regarding the casino vessel, BLH contends that it was originally the agreement between BLH and JAH to share in the profits and not the losses.[14] However, BLH contends this agreement changed because the cost of storing the vessel was increasing monthly.[15] For this reason, BLH contends JAH – through Marvin -- instructed it to sell the vessel for $450,000 and BLH would receive a $50,000 commission despite the fact that it was being sold for a loss.[16] BLH found a buyer and contends that it notified Marvin Henderson, who accepted the offer.[17] BLH further contends this new offer initiated a new agreement between JAH and BLH, under which JAH would receive $350,000 (less $10,000 previously deducted from money due BLH) directly, with approximately $110,000 to be paid to Marvin Henderson and/or his designee with respect to the Ivey House.[18] BLH also claims that, Marvin Henderson agreed that the Ivey House would be transferred at the closing of the vessel sale to BLH as partial compensation for what was owed to BLH depending on the sale price. [19]

Just prior to the sale of the vessel, JAH conveyed the vessel to BLH, and consistent with the terms of the modified agreement, at the closing of the vessel, the buyer of the vessel wired approximately $461,000 to BLH's account and conveyed the Ivey House to ELA. BLH claims Marvin Henderson was present at this closing.[20] BLH allegedly subsequently wired the $340,000 to JAH with the balance going to Marvin Henderson or

---

[13] *Id.* at ¶ 15.
[14] *Id.* at ¶ 18.
[15] *Id.* at ¶ 19.
[16] *Id.* at ¶ 20.
[17] *Id.* at ¶ 21.
[18] *Id.* at ¶ 24.
[19] *Id.*
[20] *Id.* at ¶ 25.
Document Number: 36478

his designee or being deducted from amounts already owed to BLH.[21] BLH also claims that, in addition to the $300,000 already advanced to Marvin Henderson, BLH paid to Marvin or his designees not only the $50,000 due him but an additional $50,000 on Marvin's representation that JAH would pay BLH when the Ivey House was sold.[22]

Nevertheless, it appears that Marvin failed to inform his daughter Janet Henderson Cagley about the details of the new arrangement regarding the vessel sale transaction because she later demanded that Ivey House be conveyed to J3 Enterprises, LLC, and she refused to honor the agreement between BLH and Marvin on behalf of JAH.[23] BLH then refused to sign the deed because of JAH's alleged attempt to change the agreement, at which point BLH claims Marvin offered – on behalf of JAH – to pay $250,000 toward the amount owed to BLH if BLH would transfer the Ivey House to a limited liability company owned by JAH, deducting expenses. This $250,000 was never paid, and no agreement was finalized.[24]

BLH filed a *Third Party Complaint*[25] naming as third party defendant Marvin Henderson and alleging claims of fraud, breach of covenant of good faith and fair dealing, and tortious interference with contractual rights and economic advantages. BLH avers that Marvin Henderson intentionally and knowingly defrauded BLH by representing that he was negotiating on behalf of JAH and directing payment of funds to himself personally or to his designees when he, in fact, signed a declaration denying that he is an officer or

---

[21] *Id.* at ¶¶ 26-27.
[22] *Id.* at ¶ 27.
[23] *Id.* at ¶ 28.
[24] *Id.*
[25] Rec. Doc. No. 25.

Document Number: 36478

shareholder of JAH.[26] BLH further contends that Marvin Henderson negotiated and signed on behalf of JAH in all its dealings with BLH,[27] and it never had a meeting with JAH where Marvin Henderson was not present and part of the negotiations.[28] Additionally, Marvin Henderson was allegedly listed as Chief Executive Officer on the JAH webpage until after BLH filed this counterclaim.[29] BLH further claims that Marvin Henderson intentionally and maliciously interfered with its contractual rights and economic advantages by misleading BLH as to the proper payment of the money received from the sale of the casino vessel and as to the agreement regarding the Ivey House.[30]

Marvin Henderson moves to dismiss this *Third Party Complaint* arguing that it is not a proper Rule 14 impleader claim as it does not contain a claim for indemnity, contribution, or subrogation. Alternatively, Marvin claims that BLH's substantive state law claims are unsupported by the pleadings or not recognized by Louisiana courts.

## II.   ARGUMENTS

Third party Defendant Marvin Henderson (hereinafter "Henderson") argues that BLH has failed to state a proper impleader claim against him under Rule 14 of the Federal Rules of Civil Procedure. Because a proper impleader requires that the third party's liability be dependent on the outcome of the main claim, Henderson argues BLH's impleader fails. Rather, Henderson avers that BLH brings entirely separate and independent claims against him as he is not derivatively or secondarily liable to the main Defendant on the main claim. This type of derivative liability requires a claim for

---

[26] *Id.* at ¶ 6.
[27] *Id.* at ¶ 8.
[28] *Id.* at ¶ 9.
[29] *Id.* at ¶ 10.
[30] *Id.* at ¶ 15.

Document Number: 36478

indemnity, contribution, subrogation, or the like.  Here, BLH has made no claim in its *Third Party Complaint* for indemnity, contribution, or subrogation.  Henderson contends there is no allegation of a contract between himself and BLH that would give rise to contractual indemnity; likewise, there is no allegation that BLH is vicariously liable because of merely constructive or technical fault as would be required for legal indemnity.  Henderson also argues that BLH has made no allegation that Henderson and BLH conspired to commit any intentional act that would give rise to solidary liability and a claim for contribution.  And finally, Henderson contends there is no allegation that BLH has paid or will pay an obligation owed by Henderson to JAH, which would permit a subrogation claim.  Thus, because there are no factual allegations pled demonstrating or implying that Henderson's liability to BLH is dependent on the outcome of JAH's claims against BLH, Henderson contends the impleader is improper.

Rather, Henderson claims that BLH has only alleged against Henderson separate and independent causes of action – claims that Henderson defrauded BLH, engaged in bad faith, and intentionally interfered with BLH's contractual rights and economic advantages.  Even assuming these claims arise out of the same general set of facts as the original claim, Henderson argues they do not allow for a third party complaint under Rule 14.

In the alternative, Henderson argues that, even if the Court finds proper impleader in this case, BLH's *Third Party Complaint* should still be dismissed because he has failed to state claims upon which relief can be granted under Louisiana law, and he has failed to properly plead fraud.  With respect to BLH's cause of action against Henderson for breach of the covenant of good faith and fair dealing, Henderson contends Louisiana

Document Number: 36478

requires good faith in all contractual obligations and does not recognize a separate and distinct obligation of good faith.  Moreover, Henderson contends BLH has failed to even allege a contract between himself and BLH or that Henderson owed any obligation to BLH.  Without a contract or obligation that was breached, Henderson contends his alleged lack of good faith and fair dealing with BLH is irrelevant.

Regarding BLH's cause of action for intentional interference with contractual rights and/or economic advantages, Henderson again moves the Court for dismissal. Henderson argues that Louisiana's recognition of this cause of action is "extremely limited"[31] and allows claims only against corporate officers, which Henderson claims he is not.  Because Henderson is allegedly not an officer of JAH, he contends this allegation fails and should be dismissed.[32]

Finally, as to BLH's fraud claim, Henderson contends this claim should be dismissed because the allegations of fraud fail to comport with the stringent particularity requirement of Rule 9 of the Federal Rules of Civil Procedure.  Henderson contends the following are defects to BLH's fraud claim:  (1) it is based on purported misrepresentations as to Henderson's status as a shareholder of JAH but fails to allege that Henderson actually told BLH that he was an officer of JAH; (2) BLH fails to specify how it has been harmed by Henderson's alleged actions; and (3) it fails to allege any fraudulent statements made by Henderson.

BLH opposes Henderson's motion, arguing that it has clearly presented allegations

---

[31] Rec. Doc. No. 60-1, p. 7.
[32] Henderson also argues that, to the extent BLH has stated a claim for intentional interference with a business expectancy, this claim fails because there is no allegation that Henderson improperly influenced any individual or business entity not to do business with BLH, or that Henderson acted with actual malice.

that BLH made certain payments as directed by Henderson to him or his designees, which forms the basis for an indemnity claim under Louisiana law.  BLH contends that, if it is found liable to pay these sums to JAH, it is through no fault of BLH's but because BLH relied on Henderson's apparent authority to act on behalf of JAH in directing BLH's actions.  BLH cites Louisiana jurisprudence recognizing that a party may plead tortious indemnity even where there is no contractual indemnity.[33]  BLH contends that Henderson was solely at fault in this case by directing BLH to make the payments when he lacked the authority to do so from JAH.  BLH relied wholly on Henderson's misrepresentations in making the payments, and BLH further claims that Henderson has been unjustly enriched by these payments which were to his sole benefit.

BLH further contends that, if Henderson acted outside the course and scope of his mandate from JAH, there is then a contractual relationship between Henderson and BLH under Louisiana Civil Code article 2989:  "[a] mandate is a contract by which a person, the principal, confers authority to another person, the mandatary, to transact one or more affairs for the principal."  BLH notes that, under article 3019, if a mandatary's actions exceed his authority, he may become personally liable to the third party with whom he contracted.  BLH points out that it has alleged that it entered into a number of transactions with JAH for whom Henderson was purportedly negotiating.  BLH alleges that two of these transactions were in writing, and one is even signed by Henderson on behalf of JAH.  BLH acknowledges that the intentional tort count was improperly labeled; however, it contends that the factual allegations still support a claim for tortious indemnity.

---

[33] Rec. Doc. No. 62, p. 2, citing *Martco Ltd. P'ship v. Bruks, Inc.*, 430 Fed. Appx. 332 (5th Cir. 2011).

Further, BLH argues it has satisfied the particularly requirements in pleading its claim of fraud against Henderson. BLH has alleged that Henderson apparently misrepresented that JAH had agreed to modify the agreement with respect to the casino boat transaction. BLH also argues that its allegations support a claim for contractual fraud in that Henderson allegedly misrepresented that JAH had agreed to modify the agreement regarding the casino boat transaction to personally benefit himself. BLH contends this misrepresentation caused BLH to agree to the modification of the casino boat agreement that is the subject of JAH's main demand against BLH.

In response, Henderson maintains that BLH cannot assert a claim for indemnity as no claim for indemnity is made anywhere in the *Third Party Complaint*. Henderson insists that the "deliberate decision to not include an indemnity claim" is apparent from the fact that BLH's causes of actions were numbered and labeled. Henderson also contends he has been given no notice that he must defend a claim for indemnity based on the allegations in the *Third Party Complaint*, claiming that he should not be required to "read the tea leaves" from the "cobble[d] together" indemnity claim now urged in BLH's *Opposition*.[34] Henderson contends that a claim for tortious indemnity has not been pled, he has no notice of such a claim, and it is not properly before the Court.[35] Henderson maintains that BLH has not pled fraud with particularity and maintains that BLH still cannot bring a claim for good faith and fair dealing as it has alleged no contract between BLH and Henderson.

---

[34] Rec. Doc. No. 69, p. 3.
[35] Henderson also objects to the Court granting BLH leave to amend its *Third Party Complaint*. Rec. Doc. No. 69, p. 3.
Document Number: 36478

### III.  LAW AND ANALYSIS

#### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[36]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[37]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[38]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[39]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[40]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41]  In order to satisfy the plausibility standard, the plaintiff must show "more than

---

[36] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[37] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[38] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[39] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[41] *Twombly*, 550 U.S. at 570.

Document Number: 36478

a sheer possibility that the defendant has acted unlawfully."[42]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[43]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[44]

### B. Rule 14 Impleader

Federal Rule of Civil Procedure 14 provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory."[45]  Impleader under Rule 14 is only proper "when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed."[46]

### C. Tortious Indemnity under Louisiana Law

BLH acknowledges that it misidentified its claim for tortious indemnity – stating the claim as tortious interference with contractual obligations and economic advantages but contends the allegations set forth clearly and sufficiently plead a legal indemnity claim under Louisiana law.  "It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from

---

[42] *Iqbal*, 556 U.S. at 678.
[43] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[44] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[45] *Martco*, 430 Fed. Appx. at 335–36 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1446, at 415–21 (3d ed.2010)).
[46] *Id.* at 336.

such others."[47]  "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement."[48]  Here, there does not appear to be a formal contract between BLH and Marvin Henderson; thus, there is no basis for contractual indemnity.  Rather, BLH's claim appears to rest on a theory of indemnity arising by operation of law.

A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed."[49]  Stated differently, "the right to indemnity from the person primarily negligent exists only in favor of one who is vicariously liable for the damages caused because of merely technical or constructive fault."[50]  A party "who is actually negligent or actually at fault cannot recover [legal] indemnity."[51]  Accordingly, "a third-party claim for indemnity should be dismissed if '[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings ... in the light most favorable to the [party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault.'"[52]

Accepting the well-pleaded allegations in the *Third Party Complaint* as true, and construing the pleadings favorably to BLH, there is no question that the *Third Party Complaint* states a claim against Marvin Henderson for contribution and/or indemnity under Louisiana law.  If it is found that the alleged tortious conduct of Marvin Henderson

---

[47] *Bewley Furniture Co. v. Maryland Cas. Co.*, 285 So.2d 216, 219 (La. 1973).
[48] *Nassif v. Sunrise Homes, Inc.*, 98-3193, (La. 6/29/99); 739 So.2d 183, 185 (citation omitted).
[49] *Id.*
[50] *Hebert v. Blankenship*, 187 So.2d 798, 803 (La.App. 3d Cir.1966).
[51] *Hamway v. Braud*, 2001-2364, (La.App. 1st Cir. 11/8/02); 838 So.2d 803, 806 (citation omitted).
[52] *Martco*, 430 Fed. Appx. at 335.

caused or contributed to the same damages for which JAH seeks to hold BLH liable, then Marvin Henderson is a person who may be liable to BLH for all or part of JAH's claim. From the allegations set forth, the Court cannot find that it is "beyond doubt that [BLH] can prove no set of facts in support of [its] claim which would entitled [BLH] to relief."[53]

### D.  Breach of Covenant of Good Faith and Fair Dealing

As set forth above, Henderson contends Louisiana does not recognize a separate cause of action for breach of covenant of good faith and fair dealing; rather, Louisiana requires good faith on the part of all parties to any contract.  Henderson contends dismissal on this claim is proper because there is no contract between BLH and Marvin Henderson; thus, there is no duty or obligation owed to BLH by Henderson.

"As a general rule, Louisiana recognizes an implied covenant of good faith and fair dealing in every contract."[54]  The Louisiana Civil Code requires contracts to "be performed in good faith."[55]  BLH contends that Marvin Henderson did enter a contract with BLH on behalf of JAH by acting with the apparent authority to represent JAH in such business dealings.  Thus, BLH contends Marvin Henderson had a contractual obligation to act in good faith.

"Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person ... although the principal has not actually delegated this authority to the agent."[56]  "In order for the doctrine of apparent authority to

---

[53] See Colle v. Brazos County, Tex., 981 F.2d 237, 243 (5th Cir. 1993).
[54] Occidental Chemical Corp. v. Louisiana Public Service Com'n, 494 F.Supp.2d 401, 416 (M.D. La. 2007)(quoting Clark v. America's Favorite Chicken Co., 110 F.3d 295, 296 (5th Cir.1997); Brill v. Catfish Shaks of Am., 727 F.Supp. 1035, 1039 (E.D.La.1989)(internal quotations marks omitted)).
[55] La. Civ.Code Arts.1983, 1759.
[56] Tedesco v. Gentry Dev., Inc., 540 So.2d 960, 963 (La.1989).

apply, the principal must first act to manifest the alleged mandatary's authority to an innocent third party. Then, the third party must reasonably rely on the mandatary's manifested authority."[57]  The manifestation of authority need not be express.  Rather, "apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal."[58]  "One must look from the viewpoint of the third party to determine whether an apparent agency has been created."[59]  "The burden of proving apparent authority is on the party seeking to bind the principal."[60]

BLH contends that Marvin Henderson acted on behalf of JAH in numerous contractual negotiations and business dealings previously and presented a screenshot of JAH's corporate webpage which listed Marvin Henderson as CEO as of the date of the filing of the *Third Party Complaint*.[61]  Both of the alleged actions by JAH could constitute the manifestation of authority that JAH allegedly gave Marvin Henderson to act on its behalf.  Of course, a jury could find otherwise, but on a 12(b)(6) motion, the Court must take the allegations pled as true.  BLH has sufficiently pled facts to state a plausible claim for breach of the covenant of good faith and fair dealing as it has alleged facts showing that Marvin Henderson contracted with BLH under apparent authority given by JAH. Moreover, in the Court's view, Henderson argument goes more to BLH's alleged lack of

---

[57] *Jefferson Parish Hosp. Serv. Dist. No. 2 v. K & W Diners, LLC*, 10-767 (La.App. 5 Cir. 4/12/11); 65 So.3d 662, 668.
[58] *Barrilleaux v. Franklin Found. Hosp.*, 96-0343, (La. App. 1 Cir. 11/8/96); 683 So.2d 348, 354.
[59] *Id.*
[60] *Bamburg Steel Buildings, Inc. v. Lawrence Gen. Corp.*, 36,005, (La. App. 2 Cir. 5/8/02); 817 So.2d 427, 432.
[61] "Although the court may not go outside the complaint, the Court may consider documents attached to the complaint."  *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)(citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see also Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

proof that Henderson had apparent authority to act on behalf of JAH. However, given the procedural posture of the case, BLH is not required to prove every element of its claims. The motion to dismiss this claim is denied.

### E. Fraud

Henderson has also moved to dismiss the fraud claim on the grounds that BLH has not pled fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Having found that BLH has adequately plead fraud by alleging the "who, what, when, where, and why," the Court rejects Henderson's motion to dismiss the fraud claim.

Under Rule 9(b), a heightened pleading requirement exists for fraud claims, such that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Only "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[62] Thus, a claim of fraud cannot be based on mere "speculation and conclusory allegations,"[63] and the Fifth Circuit strictly interprets the requirements for pleading fraud.[64] Essentially, Rule 9(b) "requires 'the who, what, when, where, and how' to be laid out."[65]

Considering the allegations pled, the Court fails to see how BLH has not sufficiently stated a claim for fraud. The "who" is clearly Marvin Henderson. The "what" is clearly the re-negotiation of the terms of the contract regarding the casino vessel and Ivey House.

---

[62] Fed. R. Civ. P. 9(b).
[63] *U.S. ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 385 (5th Cir. 2003).
[64] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert. denied*, 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009).
[65] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).

Document Number: 36478

The "when" is the times that Henderson negotiated on behalf of JAH and allegedly signed documents to this effect;[66] the "when" is also alleged to be April 11, 2016, when Henderson declared that he was not a shareholder or officer of JAH although he had acted as such on several occasions with BLH.[67]  Although the "where" is not clearly spelled out in the pleadings, the Court and Marvin Henderson can easily ascertain that the "where" are the places where these negotiations allegedly took place and he allegedly signed the documents.  BLH has also alleged the "why" – that Henderson perpetuated this fraud to personally benefit himself.[68]  Based on the allegations set forth, the Court finds disingenuous Henderson's argument that must "read the tea leaves" to analyze the claims brought against him when the allegations are clear.  Therefore, the Court finds that BLH has stated a plausible claim for relief with adequate particularly, and Henderson's motion to dismiss the fraud claim is denied.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's *Motion to Dismiss*[69] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 4th day of January, 2017.

_____
**SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[66] Rec. Doc. No. 25-4, signed by Marvin Henderson on May 31, 2012; Exhibit 25-5, signed by Marvin Henderson on June 8, 2012.
[67] *See* Rec. Doc. No. 13-2, Declaration of Marvin Henderson.
[68] *See* Rec. Doc. No. 25, ¶5, ¶16.
[69] Rec. Doc. No. 60.
Document Number: 36478