J.A.H. ENTERPRISES, INC.                                    CIVIL ACTION

VERSUS
                                                            NO. 16-124-SDD-RLB
BLH EQUIPMENT, L.L.C., ET AL.

# ORDER

Before the Court is Defendants' Motion to Compel (R. Doc. 86) filed on May 31, 2017 under seal without leave of court.[1] Defendants request oral argument. (R. Doc. 86-5). The motion is opposed. (R. Doc. 93).[2]

Also before the Court is Plaintiff's Motion to Compel Discovery Responses (R. Doc. 87) filed on May 31, 2017. Plaintiff requests oral argument. (R. Doc. 87-1). The Motion is opposed. (R. Doc. 92).

There is no need for oral argument as requested by the parties.

## I.     Background

On May 27, 2014, J.A.H. Enterprises, Inc., which does business as "Henderson Auctions," ("Plaintiff" or "Henderson Auctions") initiated this action in the 21st Judicial District

---

[1] Defendants did not seek leave of court to file the instant Motion under seal in violation of Section II(A) of the Court's Administrative Procedures and Paragraph 4 of the Court's Protective Order (R. Doc. 39 at 6). Based on the Court's review of the Motion, it does not appear that there was any particular need for it to be filed under seal. As no party has requested that it be unsealed, the Court will not do so at this time. Based on the contents of this Order, there is no reason that it should be filed under seal.

[2] Plaintiff filed its Opposition on July 6, 2017. There is insufficient information before the Court to determine whether the Opposition was timely filed within the 21-day period allowed for the filing of a response after service of a motion. *See* LR 7(f). Defendants did not submit a certificate of service indicating that the sealed motion was served on Plaintiff by means other than the Court's electronic filing system in accordance with Section II(E)(5) of the Court's Administrative Procedures. *See also* LR 5(g)(2) ("Most sealed filings do not produce a Notice of Electronic Filing, and therefore service by the filer of any sealed document must be in accordance with the Federal Rules of Civil Procedure and the Local Rules."). Defendants' certificate of service merely provides that the Motion was "filed electronically with the Clerk of Court using the CM/ECF system." (R. Doc. 86-1 at 5). Given Defendants' improper certificate of service, the Court will deem Plaintiff's Opposition to be timely filed.

Court, Livingston Parish, Louisiana, naming as defendants BLH Equipment, L.L.C. ("BLH"), James Blake Everett ("Blake Everett"), Sam Everett, and ELA Mission, L.L.C. ("ELA") (collectively, "Defendants"). (R. Doc. 1-2, "Petition").

On May 31, 2016, Henderson Auctions filed an Amended Complaint. (R. Doc. 31, "Am. Compl."). Henderson Auctions alleges that it acquired the former M/V Crown Casino vessel for approximately $600,000, expended approximately $300,000 to maintain, moor, and prepare the vessel for resale, and that it partnered with Blake Everett to sell the vessel and split the profits equally. (Am. Compl. ¶¶ 10-12). Henderson Auctions alleges that "Blake and Sam Everett came to Louisiana repeatedly in efforts to sell the casino vessel" and that "[t]hese two defendants eventually reached an agreement in Louisiana in mid-2013 with a buyer named Dr. Rhodes." (Am. Compl. ¶ 13). Henderson Auctions alleges that both Blake and Sam Everett represented to Jeffrey Henderson and Janet Henderson Cagley, the owners of Henderson Auctions, that the sale price would include a cash payment of $350,000 and title to a property in Kosiusko, Mississippi known as the "Ivey House." (Am. Compl. ¶ 13).

Henderson Auctions alleges that Blake Everett then set up ELA, a Mississippi limited liability company to which only Blake Everett is a member, to take ownership of the Ivey House despite the parties' agreement to place ownership into the hands of a co-owned limited liability company. (Am. Compl. ¶¶ 14-15). Henderson Auctions further alleges that Sam and Blake Everett actually contracted to obtain $460,000 from Dr. Rhodes without informing Henderson Auctions, with the intention of splitting the additional $110,000 amongst themselves and Marvin Henderson. (Am. Compl. ¶¶ 16-17).

Henderson Auctions alleges that in March of 2014, Blake and Sam Everett agreed to list the Ivey House for $750,000 without disclosing the listing to Ms. Cagley. (Am. Compl. ¶¶ 20-21). Henderson Auctions alleges that Blake and Sam Everett scheduled the auction of the Ivey

2

House and its items and that Sam Everett "personally participated in the sale of the antiques and contents from the Ivey House without disclosing to Henderson Auctions the fact of the sale or that the proceeds were going to be diverted to his, Blake Everett's, or BLH Equipment's coffers." (Am. Compl. ¶ 22). Henderson Auctions further alleges that after it learned of the sale of the Ivey House's furniture, fixtures, and equipment, it obtained "a temporary restraining order from a Mississippi state court requiring the escrow of any proceeds of the sale of the assets and an injunction against the sale of the Ivey House" and "obtained an agreement with Nick Clark . . . to retain the proceeds from the sale until further notice." (Am. Compl. ¶ 23).

Based on the foregoing, Henderson Auctions asserts that Sam Everett, Blake Everett, and/or BLH "obtained an undisclosed commission and/or benefits from the seller of the casino vessel, misrepresented the sales price of the casino vessel to Henderson Auctions, retained approximately $110,000.00 in funds over and above $340,000.00 wired to Henderson Auctions as the sales price to Dr. Rhodes, retained all funds from the sale of the furniture, fixtures and equipment at the Ivey House, as well as funds from the Ivey House itself, in derogation of obligations owed to Henderson Auctions to pay off the approximate $700,000.00 in expenses related to the M/V Crown Casino." (Am. Compl. ¶ 25).

Henderson Auctions further alleges that Blake Everett has sought from Henderson Auctions, on behalf of himself or BLH, the amount of at least $551,877 from various transactions involving the sales and/or usage of certain equipment. (Am. Compl. ¶ 26). Henderson Auctions asserts that it does not owe any money to the Defendants, and that it has lost approximately $570,000 on transactions involving Blake Everett. (Am. Compl. ¶ 27). With regard to the other transactions forming the basis of the counterclaim asserted by Sam Everett's co-defendants, Henderson Auctions asserts that "Sam Everett has been an active participant in the transactions . . . , including repeated travels to Louisiana to participate in negotiations with

third parties and Henderson Auctions (including meetings with Marvin Henderson)." (Am. Compl. ¶ 36).

Henderson Auctions seeks to recover damages and/or declaratory relief for the following causes of action: (1) Breach of Fiduciary Duty; (2) Breach of Contract/Bad Faith Breach of Contract; (3) Detrimental Reliance; (4) Conversion/Fraud/Misrepresentation; (5) Declaratory Judgment; and (6) Demand for Accounting. (Am. Compl. ¶¶ 38-67).

BLH, Blake Everett, and ELA filed an Answer and Counterclaim in response to Henderson Auction's original Petition. (R. Doc. 6). BLH, Blake Everett, and ELA assert, among other things, an affirmative defense of "offset by amount amounts owed by Plaintiff to defendants." (R. Doc. 6 at 2).

BLH alone raises a counterclaim against Henderson Auctions for "Breach of Contract/Bad Faith Breach of Contract" and "Demand for Accounting." (R. Doc. 6 at 13-21). BLH alleges that beginning in 2012, it had an arrangement with Henderson Auctions whereby it would identify property for auction, Henderson Auctions would finance the purchase of the items if interested and auction off the items, and BLH and Henderson Auctions would split 50% of the profit. (R. Doc. 6 at 15). BLH references a spreadsheet of the transactions in its pleading, which appears to be attached as an exhibit to a separate motion to dismiss. (R. Doc. 5-3). This spreadsheet provides an accounting of various purchases of items from October 4, 2012 through March 4, 2014 and indicates a balance due to BLH from Henderson Auctions in the amount of $601,877. (R. Doc. 5-3).

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rules 33 and 34 provide a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rules 33 and 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Defendants' Motion to Compel (R. Doc. 86)

Defendants represent that on May 26, 2017, Plaintiff provided them "with a spreadsheet dated May 24, 2017 [that Plaintiff] prepared in accordance with Federal Rule of Evidence 1006." (R. Doc. 86-1 at 2). Defendants seek an order requiring Plaintiff "to produce the source documents it used to prepare its 1006 summary or, in the alternative, make those documents available for inspection and copying." (R. Doc. 86-1 at 2). Defendants represent that Plaintiff contends that the source documents have already been provided to Defendants. (R. Doc. 86-1 at 2). Defendants attached "sample" documents produced by Plaintiff. (R. Doc. 86-2). Defendants did not submit a copy of the spreadsheet dated with their Motion to Compel.

In opposition, Plaintiff asserts that "[a]t the time that [the] Rule 1006 exhibits were produced, [Plaintiff] had already produced recordings of each auction where equipment was sold and documents showing the item numbers for equipment, purchase price(s), date(s) of acquisition, expenses, dates of sale, the identity of the buyers, each buyer's invoice, the amount of the sale's price, and whether the transaction was profitable." (R. Doc. 93 at 1). Plaintiff further assets that it only became evident a few days before the discovery deadline that Defendants "wanted the actual checks, wire receipts, or credit card receipts, etc., by which third parties had paid for each piece of equipment after each auction," which had not been reviewed or used to prepare the summary. (R. Doc. 93 at 1). Plaintiff represents that it produced these banking documents on June 7, June 8, and June 20, 2017. (R. Doc. 93 at 4).

Rule 1006 provides the following:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.

Given Plaintiff's representations in its Opposition, it does not appear that any additional documents must be produced pursuant to Rule 1006. Moreover, to the extent Defendants are seeking supplemental responses to specific discovery requests, they have not identified, as required by Local Rule 37, any particular discovery requests in response to which they are seeking a supplemental response.

For the foregoing reasons, the Court will deny Defendants' Motion to Compel as moot.

C. **Plaintiff's Motion to Compel (R. Doc. 87)**

Plaintiff asserts that Defendants have failed to provide "adequate responses" to Plaintiff's "Requests for Production of Documents propounded on April 8, 2016 and May 25, 2016 respectively." (R. Doc. 87 at 1). On May 16, 2016, Defendants provided responses to Plaintiff's "first set" of discovery requests. (R. Doc. 87-2). On May 25, 2016, Plaintiff requested supplemental responses to Interrogatory Nos. 7, 8, 9, 10, 12, 13, 14, 16, and 19; and supplemental responses to Request for Production Nos. 7, 8, 10, 11, 12, 13, 14, and 19. (R. Doc. 87-3). Sometime in July of 2016, Defendants provided supplemental responses to Plaintiff's "first set" of discovery requests. (R. Doc. 87-4). Based on the record, it appears that Plaintiff only propounded one set of discovery requests on April 8, 2016.[3]

Plaintiff has not provided copies of the actual discovery requests propounded or identified the specific discovery requests in response to which they are seeking a supplemental production of documents.[4] It is therefore unclear to the Court which of the actual interrogatories and/or requests for production remain at issue. To the extent Plaintiff has not identified the actual written discovery at issue, the instant Motion violates Local Rule 37, which requires a

---

[3] Plaintiff's reference to May 25, 2016 discovery requests appears to actually refer to Plaintiff's request on May 25, 2016 for Defendants to supplement their responses to Plaintiff's first, and only, set of discovery requests.
[4] Instead, Plaintiff provided copies of Defendants' May 16, 2017 responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents. (R. Doc. 87-2).

7

party moving to compel responses to discovery requests to "quote verbatim each interrogatory, request for production, or request for admission to which the motion is addressed, followed immediately by the verbatim response or objection which provided thereto." LR 37.

The Court will not peruse all of Plaintiff's interrogatories and requests for production, as well as Defendants' responses, to determine exactly what Plaintiff wants compelled. The attachments to Plaintiff's Motion indicate that in its most recent exchange with Defendants on May 16, 2017, it requested supplemental responses to Interrogatory Nos. 3, 12, 13, 14, and 16; and Request for Production Nos. 1, 3, 7, 8, 10, and 12. (R. Doc. 87-5). Defendants do not dispute that a proper Rule 37(a)(1) conference was held on the foregoing discovery requests. Accordingly, the Court will assume that these are the only discovery requests that remain in dispute.

Plaintiff's motion and memorandum in support, however, focus solely on requiring Defendants to produce supplemental documents in response to the Requests for Production. Plaintiff asserts that Defendants have not produced "any documentation and information on purchases of equipment from third parties prior to the resale of Henderson auctions." (R. Doc. 87 at 5). Plaintiff also asserts that it seeks "all email correspondence between and among Defendants," and requests the Court to order Defendants to produce their computers, iPads, and phones to allow a third-party expert to download the email correspondence and other documents on those devices. (R. Doc. 87 at 6). Finally, Plaintiff seeks an order requiring Sam Everett to produce his "financial documentation to show the accounting for compensation derived from BLH Equipment." (R. Doc. 87 at 7).

Considering the foregoing, to the extent Plaintiff is seeking an Order requiring any additional responses to its interrogatories, the Court will deny the instant Motion. Plaintiff's brief fleetingly mentions that Plaintiff served interrogatories on Defendants. Neither the motion

nor the memorandum in support seeks an order requiring supplemental responses to interrogatories. The Court will, however, consider whether, and to what extent, Defendants must provide supplemental responses to Request for Production Nos. 1, 3, 7, 8, 10, and 12.

### 1. Request for Production No. 1

Plaintiff's Request for Production No. 1 seeks production of all documents relating or referring to the Defendants' claims for damages, losses, compensation, or any other type of relief, which are or is the subject of this lawsuit. (R. Doc. 87-2 at 19).

BLH, ELA, and Blake Everett produced certain documents without objection. (R. Doc. 87-2 at 20). BLH, ELA, and Blake Everett have asserted an affirmative defense of offset, and BLH has alleged breach of contract claims against Plaintiff, as well as made a demand of accounting. (R. Doc. 6). The information sought by this request is relevant to those claims and defenses, and is otherwise proportional to the needs of this case. Accordingly, to the extent that BLH, ELA, and Blake Everett have not done so, they must produce all non-privileged documents responsive to this request for production in their possession, custody or control.

Sam Everett objected to this request on the basis that it is "irrelevant as no agreements or transactions which are subject of this lawsuit were made between Plaintiff and Sam Everett individually." (R. Doc. 87-2 at 20). This objection is improper as nothing in the request limits production of documents to claims brought by Sam Everett. According to the Motion, bank records show a transfer of "at least $50,000.00 to Sam Everett in 2012 to early 2014." (R. Doc. 87 at 7). Accordingly, Sam Everett's objection is overruled. Sam Everett must produce all non-privileged documents responsive to this request for production in his possession, custody or control. If no such documents exist, he shall respond accordingly.

### 2. Request for Production No. 3

Plaintiff's Request for Production No. 3 seeks production of copies of all documents and other physical evidence that Defendants may use at hearing or trial as an exhibit, demonstrative evidence, or in the aid of testimony or argument. (R. Doc. 87-2 at 20-21).

BLH, ELA, and Blake Everett objected on the basis that the request was premature, and that they would provide an exhibit list in accordance with the Court's Scheduling Order, but nevertheless produced certain documents in response to the request. (R. Doc. 87-2 at 21). These defendants are correct that the parties need not identify exhibits until they are used in support of summary judgment or are otherwise required to be identified by the Court's Scheduling Order. For this reason, the Court denies Defendants' Motion, which seeks an order compelling production of an exhibit to be used in support of summary judgment and/or trial. Accordingly, these defendants' objection is sustained.

Sam Everett objected to this request on the basis that it is "irrelevant as no agreements or transactions which are subject of this lawsuit were made between Plaintiff and Sam Everett individually." (R. Doc. 87-2 at 21). This objection is improper as nothing in the request limits production of documents to claims brought by Sam Everett. Nevertheless, the Court will not require Sam Everett to provide a supplemental response because the parties need not identify exhibits until they are used in support of summary judgment or are otherwise required to be identified by the Court's Scheduling Order.

### 3. Request for Production No. 7

Plaintiff's Request for Production No. 7 seeks production of all documents that reflect or refer to payments that any defendant "made to third parties in connection with the acquisition of equipment (or any other movable), which was then sold, consigned, or delivered to Plaintiff or any of its representatives" including "documents regarding any transaction on which BLH has

claimed a commission for amount due that appear on the schedule designated document 5-3 filed on March 31, 2016 in this action." (R. Doc. 87-2 at 22-23).

BLH, ELA, and Blake Everett objected on the basis that the request sought documents in the possession, custody, or control of Plaintiff and otherwise directed Plaintiff to their response to Interrogatory No. 7. (R. Doc. 87-2 at 23).

This request seeks information relevant to Plaintiff's claims, Defendants' affirmative defense of offset, and ELH's counterclaims, and is otherwise proportional to the needs of this case. Whether Plaintiff has in its own possession, custody, or control some or all of the requested documents is not controlling. Plaintiff is entitled to determine what documents are in the possession, custody, or control of the Defendants that Defendants contend fall within the scope of the requests. Accordingly, the Court will require BLH, ELA, and Blake Everett to provide all non-privileged documents responsive to this request for production in their possession, custody, or control.

Sam Everett objected to this request on the basis that it is "irrelevant as Sam Everett, individually, has made no payments to any parties in connection with this litigation [and] therefore there are no documents to produce." (R. Doc. 87-2 at 23). This objection is improper as nothing in the request limits production of documents to payments only made individually by Sam Everett. As stated above, the request for production seeks information within the scope of discovery. Accordingly, the Court will require Sam Everett to provide all non-privileged documents responsive to this request for production in his possession, custody, or control. If no such documents exist, he shall respond accordingly.

### 4. Request for Production No. 8

Plaintiff's Request for Production No. 8 seeks production of "all financial documentation, including but not limited to tax returns, financial statements, checkbook registers, bank

statements, accounting work papers, ledgers, etc., for Blake Everett, Sam Everett, BLH and ELA Mission, LLC, including all K-1s and documents showing distributions to each person or from the entities between January 1, 2012 to the present." (R. Doc. 87-2 at 23).

All of the defendants objected on the basis that the information sought is "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (R. Doc. 87-2 at 24). Blake Everett and Sam Everett further objected on the basis that "any agreements and payments made were in connection with business conducted between BLH and/or ELA Mission and JAH/Henderson Auctions, not individually with James Blake Everett and/or Sam Everett." (R. Doc. 87-2 at 24).

This request seeks information relevant to Plaintiff's claims, Defendants' affirmative defense of offset, and ELH's counterclaims, and is otherwise proportionate to the needs of this case. Whether Defendants contend that the "agreements and payments" at issue were made by Blake Everett or Sam Everett in their individual capacities has no bearing on the discoverability of this information.

Accordingly, the Court will require BLH, ELA, Blake Everett, and Sam Everett to provide all non-privileged documents responsive to this request for production in their possession, custody, or control.

### 5. Request for Production No. 10

Plaintiff's Request for Production No. 10 seeks production of "any and all Documents or Records received or exchanged by or between Plaintiff and any Defendant in regards to the transactions that are subject of this litigation, including all text messages, emails, letters, notes and other such Documents." (R. Doc. 87-2 at 24). In response, Defendants referenced their responses to Request for Production No. 1. (R. Doc. 87-2 at 24-25).

BLH, ELA, and Blake Everett responded to Request for Production No. 1 by producing certain documents without objection. Plaintiff provides no analysis regarding what information responsive to Request for Production No. 10 has not been produced by these defendants. Accordingly, the Court will not require those defendants to respond any further.

Sam Everett objected to Request for Production No. 1 on the basis that it is "irrelevant as no agreements or transactions which are subject of this lawsuit were made between Plaintiff and Sam Everett individually." (R. Doc. 87-2 at 20). The Court will overrule this objection. It is irrelevant whether Sam Everett entered into any transactions individually. The request merely seeks the production of communications involving the underlying transactions that were "received or exchanged by or between Plaintiff and any Defendant" that concern the underlying transactions. Accordingly, the Court will require Sam Everett to produce responsive documents that are in his possession, custody, or control.

The Court finds no basis to order any of the Defendants to produce their computers, iPads, and phones to allow a third-party expert to download the email correspondence and other documents on those devices.

### 6. Request for Production No. 12

Plaintiff's Request for Production No. 12 seeks production of "any and all Documents or Records received or exchanged by or between any defendant and any third party in regards to the transactions that are subject of this litigation, or as alleged in paragraphs 19-28 of your counterclaim, including all text messages, emails, letters, notes and other such Documents." (R. Doc. 87-2 at 24). In response, Defendants referenced their responses to Request for Production No. 1. (R. Doc. 87-2 at 25-26).

BLH, ELA, and Blake Everett responded to Request for Production No. 1 by producing certain documents without objection. Plaintiff provides no analysis regarding what information

responsive to Request for Production No. 12 has not been produced by these defendants. Accordingly, the Court will not require those defendants to respond any further.

Sam Everett objected to Request for Production No. 1 on the basis that it is "irrelevant as no agreements or transactions which are subject of this lawsuit were made between Plaintiff and Sam Everett individually." (R. Doc. 87-2 at 20). The Court will overrule this objection. It is immaterial to this request whether Sam Everett entered into any transactions individually. The requests merely seeks the production of communications involving the underlying transactions that were "received or exchanged by or between any defendant and any third party" that concern the underlying transactions. Accordingly, the Court will require Sam Everett to produce responsive documents that are in his possession, custody, or control. If no such documents exist, he shall respond accordingly.

The Court finds no basis to order any of the Defendants to produce their computers, iPads, and phones to allow a third-party expert to download the email correspondence and other documents on those devices.

### 7. Request for Reasonable Expenses

The Court has denied Plaintiff's Motion in part. Under these circumstances, the Court may "apportion the reasonable expenses for the motion" after "giving an opportunity to be heard." Fed. R. Civ. P. 37(a)(5)(C). Considering the record, the Court finds it appropriate to order the parties to bear their own costs.

## III. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Compel (R. Doc. 86) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (R. Doc. 87) is **GRANTED IN PART and DENIED IN PART** as detailed in the body of this Order.

Defendants shall provide supplemental responses to Request for Production Nos. 1, 7, 8, 10 and 12, as detailed in the body of this Order, within **10 days** of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on July 12, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**